UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:10-CV-00778-JHM

ELIZABETH ANN SHETLER                                                                 PLAINTIFF

V.

ALDI, INC;
BESAM US, INC.; AND
SPECIALTY ENTRANCE TECHNOLOGIES, LLC                              DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants Specialty Entrance Technologies, LLC and Besam US, Inc.'s Motions for Summary Judgment [DN 64 and 68]. Fully briefed, this matter is ripe for decision. For the following reasons, the Court **DENIES** Defendant Specialty Entrance's Motion for Summary Judgment and **GRANTS** the Defendant Besam U.S. Inc.'s Motions for Summary Judgment.

**I. STANDARD OF REVIEW**

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical

doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The rule requires the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by " showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

## II. BACKGROUND

Elizabeth Ann Shetler was a patron at an ALDI, Inc. ("ALDI") store on December 5, 2009. The store, located on Preston Highway in Louisville, Kentucky ("Store 38"), has two automated doors in each of its entrance and exit locations, an interior and exterior door at both. Shetler was exiting the store through the interior exit door when the automatic door began to swing close, striking Shetler and causing injuries.

The automatic doors are triggered by a motion sensor which detects a person or object moving towards the door and causes the door to open and close automatically. The door system contained a VisionPulse sensor that was originally manufactured by Besam US Inc. ("Besam"). Besam manufacturers automated entrance component parts that are combined by architects and engineers in order to meet the physical characteristics of the site. Besam discontinued manufacturing the VisionPulse Sensor and last accepted orders for it in March of 2001.

Speciality Entrance Technologies, Inc. ("Specialty Entrance") provides maintenance and service on automatic doors, manual doors, closures and entry access systems. Beginning in approximately 2003, Speciality Entrance would perform services on Store 38's doors at the request

of management. Prior to Shetler's accident, Speciality Entrance last performed services on the interior exit door on February 12, 2007. In early 2007, the VisionPulse sensor on the door was malfunctioning. Speciality Entrance tested the VisionPulse sensor and rewired the sensor system. Speciality Entrance performed services for Store 38 on November 10, 2009 but was not asked to work on the interior exit door.

Shetler brought suit against ALDI, Besam and Speciality Entrance on November 24, 2010 in Jefferson Circuit Court. The action was removed to this Court on December 29, 2010.

## III. DISCUSSION

Besam and Speciality Entrance have each filed motions for summary judgment. The complaint alleges that Speciality Entrance was negligent under its contract with ALDI as well as general negligent claims. The claims against Besam allege negligent design, manufacture, assembly and inspection of the subject door installed at ALDI and failure to warn and or adequately warn, instruct and/or adequately instruct Shetler concerning the defective design and/or assembly of the door.

### A. Speciality Entrance

In its motion for summary judgment, Speciality Entrance states that the evidence shows that Speciality Entrance was not under contract with ALDI to service the door. ALDI would call on Speciality Entrance as needed, but Speciality Entrance had no contractual obligation to provide inspections, maintenance or service. In regards to the negligence claim, Speciality Entrance argues that it owed no duty to Shetler as it had not been called on by ALDI to work on the door at issue in almost three years prior to Shetler's fall. Speciality Entrance reasons that it exercised reasonable care in performing maintenance on the door and Shetler's injuries were not foreseeable given the

length of time after the door's last service. Furthermore, Speciality Entrance states even if a duty existed, it did not breach any duty.

In response, Shetler claims that Speciality Entrance was under multiple duties established by the American Association of Automatic Door Manufacturers ("AAADM"). According to Shetler's expert, Warren Davis, both Jason Renz and Jay Alexander, founders of Speciality Entrance, were certified by the AAADM to conduct inspections and were required to comply with its standards. Particularly, Dr, Davis states that Speciality Entrance breached its duty because it did not 1) maintain the doors in compliance with the current version of ANSI standard; 2) alert ALDI of deficiencies; 3) check to see if ALDI was doing proper daily safety checks on the door, instructing the owner on how the checks should be performed; or 4) check to make sure the owner had a door owner's manual. Pointing to deposition testimony and Warren Davis' report, Shetler states that summary judgment is inappropriate because questions of fact exist as to Specialty Entrance's breach of its duties. Furthermore, Shetler argues that if Speciality Entrance had not breached its duties and informed ALDI about the refurbished sensor or how to properly perform daily checks, ALDI would have either upgraded their door, or would have discovered a faulty sensor prior to the accident, preventing Shetler's accident.

To succeed on a claim of negligence, the plaintiff must establish that (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached its duty, and (3) the breach proximately caused the plaintiff's damages. Mullins v. Commonwealth life Insur. Co., 839 S.W.2d 245 (Ky. 1992). "Kentucky courts recognize a 'universal duty' of care under which 'every person owes a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injury.'" Lee, 245 S.W.3d at 212 (quoting Grayson Fraternal Order of Eagles, Aerie No. 3738, Inc. v.

4

Claywell, 736 S.W.2d 328, 332 (Ky. 1987)). For Specialty Entrance "to be entitled to judgment as a matter of law, it must show that (1) it was impossible for [Shetler] to produce any evidence in her favor on one or more of the issues of fact; (2) under the undisputed facts of the case, it owed no duty to [Shetler] . . . ; or (3) as a matter of law, any breach of a duty it owed to [Shetler] was not a legal cause of her injuries." Pathways, Inc. v. Hammons, 113 S.W.3d 85, 89 (Ky. 2003) (citations omitted).

Whether a duty exists is a question of law to be determined by the court. Id. at 89. That determination is "essentially a policy determination." Sheehan v. United Serv. Auto. Ass'n, 913 S.W.2d 4, 6 (Ky. Ct. App. 1996). at 89 (citation omitted). "Duty may be established in several ways, but ultimately, 'the most important factor in determining whether a duty exists is foreseeability.'" Boland-Maloney Lumber Co., Inc. V. Burnett, 302 S.W.3d 680, 686 (Ky. App., 2009) (quoting David J. Leibson, 13 Kentucky Practice: Tort Law § 10.3, p. 113 (1995)). In negligence cases "involving professionals or professions requiring special skill and expertise, the standard is typically measured by the standard of conduct customary in the profession under the circumstances," which usually requires expert testimony. Id. Shetler attempts to establish a duty through its expert, Dr. Davis, and through the AAADM standards. Jay Alexander and Jason Renz are both certified through the AAADM which certifies door inspectors, installers and service techinicians, as well as requiring its manufacturer members to make automatic doors and components in compliance with the American National Standards Institute ("ANSI"). AAADM and the ANSI are examples of the standard of conduct customary for automatic door manufacturers, and compliance and membership is voluntary.

The AAADM has nationwide standards which are applicable to both service repairmen and

5

inspectors. Although membership in the AAADM is voluntary, the Court finds the standards sufficiently define the standard of care, or the universal duty of care as recognized in Kentucky, which Speciality Entrance owed under the facts of this case. The standard required Speciality Entrance to bring deficiencies to the attention of the store owner or manager. Dr. Davis has stated that, in 2007, Specialty Entrance should have advised ALDI that a more modern and reliable sensor should be used rather than a refurbished, obsolete and discontinued VisionPulse sensor. The reason the standard requires service technicians to bring deficiencies to the attention of the owner is the recognition that a malfunctioning door may harm those using it.

     Speciality Entrance claims it notified ALDI of the deficiencies inherent in the VisionPulse sensor used on the interior exit door. Specialty Entrance claims that it fulfilled this duty in 2003 during Specialty Entrance's initial discussions with a manager at ALDI upon first becoming a service provider for the store. (Alexander Dep. 39:16-42:5 [DN 92].) Jay Alexander testified in his deposition that he informed the manager that the VisionPulse sensors were no longer manufactured. (Id.) However, David Winck, the Director of Store Operations for ALDI for the past three years, has testified that he was unaware that Specialty Entrance was using refurbished parts to repair the interior exit door's sensor. Additionally, Dr. Davis, in his report, stated that AAADM-certified technicians are required to document the fact that a door owner refuses to authorize a necessary upgrade, and he found no evidence of any such documentation. (Pl.'s Expert Report, 13 [DN 97-1].) Therefore, the Court finds that there is a genuine issue of material fact as to whether Specialty Entrance breached its duty of care.

     Causation, or proximate cause, is defined by the substantial factor test: "was the defendant's conduct a substantial factor in bringing about the plaintiff's harm?" Morales v. American Honda

Motor Co., 151 F.3d 500, 507 (6th Cir.1998) (citing Deutsch v. Shein, 597 S.W.2d. 141, 144 (Ky.1980)). If the jury determines that Specialty Entrance did breach its duty of care, it will be up to the jury to decide if the breach was a substantial factor in causing Shetler's injuries. For these reasons, the Court finds that summary judgment in favor of Specialty Entrance on Shetler's negligence claim is denied.

### B. Besam

Shetler has brought a products liability claim against Besam, alleging that Besam was negligent in its design and manufacture of the VisionPulse sensor used in the Store 38 automated door and failed to warn about the defective condition of the door. Besam has asked for summary judgment based on KRS 411.320 which states that "[i]n any product liability action, a manufacturer shall be liable only for the personal injury, death or property damage that would have occurred if the product had been used in its original, unaltered and unmodified condition." KRS § 411.320(1). Besam reasons that since it stopped manufacturing the VisionPulse sensor in 2001 and the sensor in the Store 38 automated door was made up of refurbished parts it is not liable for Shetler's accident. As support for its argument, Besam cites Monsanto Co. v. Reed in which the Kentucky Supreme Court held that

> [A] manufacturer, under whatever legal theory, is not liable for injuries following the alteration, destruction, or mutilation of its product, or by its misuse which was not reasonably foreseeable. Consistent with proper negligence theory, such conduct would be an independent intervening cause of the injury.

950 S.W.2d 811, 815 (Ky. 1997). Besam also contends that KRS 411.310, provides a presumption, "until rebutted by a preponderance of the evidence to the contrary, that the subject product was not defective if the injury, death or property damage occurred either more than five years after the date of sale to the first consumer or more than eight years after the date of manufacture." KRS §

7

411.310(1). Since Besam has not sold a VisionPulse sensor since 2001, eight years prior to the accident, it argues this presumption applies and Shetler has no proof to overcome the presumption. Besam states it can not be held liable for a failure to warn theory either, because, following the original sale of the product, Besam would have been unable to foresee that the sensor would be refurbished and placed in Store 38, leaving Besam without the ability to warn.

      Shetler responds by stating that Besam's argument must fail because KRS 411.320(1) was repealed by KRS 411.182(1) in 1995. KRS 411.182 provides for allocation of fault in tort actions, including products liability. Shetler points to <u>Caterpillar, Inc. v. Brock</u> in which the Sixth Circuit requested certification of the law from the Kentucky Supreme Court as to the question "Did Kentucky Revised Statute 411.182(1) negate and/or overrule Kentucky Revised Statute KRS 411.320(1)?" 915 S.W.2d 751 (Ky. 1996). Since the Kentucky Supreme Court answered in the affirmative, holding that KRS 411.182(1) negated KRS 411.320(1), Shetler states that KRS 411.320(1) is not grounds for summary judgment. As to the presumption in KRS 411.310, Shetler argues that she can rebut the presumption by providing evidence and expert opinion that the VisionPulse sensor caused the accident in at least one of three ways: (1) "[t]he approach side VisionPulse could have been in an outright failed condition and, therefore, incapable of detecting Ms. Shetler's presence"; (2) "Ms. Shetler may have been wearing clothing incapable of reflecting sufficient near infrared light from the VisionPulse sensor to cause the sensor to generate a detection signal"; or (3) "[t]he VisionPulse sensor on the approach side of the door panel may have been incapable of providing presence detection coverage all the way to, and including, the leading edge of the panel." (Report of Plaintiff's Expert, p. 6 [DN 97-1]). Shetler also states that the failure to warn claim is inappropriate for summary judgment because Besam was aware of problems with the

VisionPulse sensor and the owner's manual did not address any of the sensor's flaws.

In a product liability case such as this, "the question is whether the product creates such a risk of an accident of the general nature of the one in question that an ordinarily prudent company engaged in the manufacture of such a product would not have put it on the market." Montgomery Elevator Co. v. McCullough, 676 S.W.2d 776, 780 (Ky. 1984) (quotation omitted). Kentucky law states that all products liability actions, "regardless of whether the case involves failure to adequately warn, defective design or other products liability theories, [require proof that] the product is defective." Leslie v. Cincinnati Sub-Zero Products, Inc. 961 S.W.2d 799, 803-804 (Ky. App. 1998). The Complaint alleges negligence on the part of Besam in its design and manufacture of the product, which requires negligent conduct by Besam. See Montgomery Elevator Co. v. McCullough, 676 S.W.2d 776, 780 (Ky. 1984).

First, the Court finds that KRS 411.320(1) is no longer good law. There are contradicting opinions from the Kentucky Supreme Court regarding a manufacturer's liability after a product has been remanufactured or refurbished. See Caterpillar, 915 S.W.2d 751 (holding that KRS 411.320(1) is no longer good law); but see Mansanto Co., 950 S.W.2d 811 (holding that a manufacturer is not liable for injuries following the alteration of its product). While Mansanto was decided a year after Caterpillar, subsequent case law has continued to uphold the findings of both. This Court finds the reasoning in Caterpillar, and the cases that followed, to be persuasive as to the intent of the Kentucky Legislature in enacting the comparative fault statute. See Low v. Power Tool Specialist, Inc., 803 F.Supp.2d 655 (E.D. Ky. March 22, 2011) (holding that KRS 411.320 does not remain good law, acknowledging that Mansanto enforced the section, but failed to even acknowledge and distinguish the holding in Caterpillar); Owens Corning Fiberglas Corp. v. Parrish, 58 S.W.3d 467

(Ky. 2001) (holding that, by codifying comparative fault, the Kentucky legislature repealed KRS 411.320(3)); Leslie v. Cincinnati Sub-Zero Products, Inc., 961 S.W.2d 799 (Ky. App. 1998) (finding that KRS 411.320(1) "was deemed to be repealed by the enactment of the comparative fault statute," KRS 411.182); see also 13 Ky. Prac. Tort Law § 10:58 (2011) (concluding that even though the KRS 411.182 legislation did not expressly repeal 411.320(1), the courts have). Therefore, comparative fault and apportionment applies, and Besam can not base their argument for summary judgment on KRS 411.320(1).

Second, as to the presumption under KRS 411.310, the Court finds it applicable to the facts since Besam last produced a VisionPulse sensor in 2001 and this action occurred in late 2009. The VisionPulse Sensor is presumed to not be defective. However, "[t]he statutory presumptions of KRS 411.310 do no more than leave the burden of proof with [Shetler] to prove that the [VisionPulse sensor] was defective." Boon Edam, Inc. v. Saunders, 324 S.W.3d 422, 432 (Ky. App. 2010) (quoting Leslie, 961 S.W.2d at 803). Once a presumption is rebutted, material issues of fact exist as to whether the defectiveness caused or contributed to the plaintiff's injuries. See Smith v. Louis Berkman Co., 894 F.Supp. 1084, 1091 (W.D. Ky. Aug. 16, 1995).

The question now is whether Shetler has sufficient proof that the VisionPulse sensor was defective. Shetler has provided expert opinion alleging that Besam was aware of defects in the VisionPulse sensor in 1998 and subsequently removed it from the market. Without viewing or examining the sensor at issue, Warren Davis, Shetler's expert, also lists three possible causes of the failure of the VisionPulse sensor. While Shetler can not offer direct evidence of the defect that caused her to fall, Kentucky law allows the use of circumstantial evidence to prove a defect under certain facts, particularly in manufacturing defects "when the plaintiffs were able to eliminate all

10

other reasonable explanations[.]" Siegel v. Kentucky Farm Bureau Mut. Ins.Co., 2010 WL 3000746 at *4 (W.D. Ky. July 26, 2010); see also Perkins v. Trailco Mfg. And Sales Co., 613 S.W. 2d 855 (Ky. 1981). In order to prevail using circumstantial evidence, the plaintiff must introduce "evidence that will support a reasonable inference that the defect was the 'probable' cause of the accident as distinguished from a 'possible' cause among other possibilities; otherwise, the jury verdict is based upon speculation or surmise." Greene v. B.F. Goodrish Avionics Systems, Inc., 409 F.3d 784, 793 (6th Cir. 2005) (quoting Midwestern V.W. Corp. v. Ringley, 503 S.W.2d 745, 747 (Ky. 1973)).

Shetler can not eliminate all other reasonable explanations for the door's defect. In fact, in Dr. Davis report, he states that "[a]side from other failures within the door system for which there is no evidence, there are three *possible* causes of the failure of the approach side VisionPulse sensor." (Report of Plaintiff's Expert, p. 5 [DN 97-1] (emphasis added).) In a footnote he gives an example of other failures for which there is no evidence: "failure of the control electronics within the door header to respond properly to a detection signal from the VisionPulse sensor could also account for the accident." (Id. at n5). Dr. Davis also frequently refers to ALDI's failure to do daily safety checks, as well as the gap of time between service calls as contributing factors. (Id. at 6-7.) Davis states that ALDI did not place the door under "a program of preventative maintenance, but, rather, serviced the subject door and the others at the facility on an 'as needed' basis only. One of the consequences is that the subject door went for four years (48 months) without attention." (Id. at 16.) In acknowledging that this is a refurbished sensor with components that remain in use throughout the entire lifetime of the sensor, Dr. Davis voices concern about "the effects of stresses induced in those components by years of powered up service, as well as other sources of deterioration, such as component aging at the molecular level independent of applied electrical

11

stresses[.]" (Id at 12.) Stress induced on a component over years of use is not a defect in the product itself. In regards to Besam, Dr. Davis "proof in this case establishes no more than possibilities or combinations of possibilities." Siegel, 2010 WL 3000746 at *4 (quoting Texas v. Standard, 536 S.W.2d 136, 138 (Ky. 1976)). The circumstantial evidence provided would not lead a jury to conclude that the sensor was defective as manufactured or designed by Besam and that was a 'probable' cause of Shetler's injuries.

Shetler has pointed to Boon Edam, Inc. v. Saunders as support for its product liability claim. 324 S.W.3d 422. Similarly, that case involved an injury as a result of an automatic door with expert testimony provided by Dr. Davis. The facts of that case, however, are easily distinguishable from this case. The accident occurred three years after Boon Edam manufactured the automatic revolving door and immediately following the accident, the door and the panels were removed and stored. When the doors were examined by a technician, a "dead zone" was discovered in the sensor where a portion of the sensor was not detecting the presence of people. Id. at 423. The evidence in Boon Edam, Inc. pointed to an obvious defect in the sensor at issue. That is not the case here.

Furthermore, the theory of res ipsa loquitur as advanced by Shetler, is not applicable to Besam under these facts since Besam did not have any control or management over the product once it left production. See Vernon v. Gentry, 334 S.W.2d 266 (Ky. 1960) (a requirement in order to invoke the res ipsa loquitur doctrine is that the defendant must have had full management of the instrumentality which caused the injury); Kniffley v. Reid, 152 S.W. 2d 615, 617 (Ky. 1941) (the presumption of negligence raised by the res ipsa loquitur doctrine requires evidence that the defendant vested the control of the instrumentality causing the injury and had notice of such defect).

Since Shetler can not point to a probable defect, her failure to warn claim must also fail. In

Kentucky and the Restatement (Second) Torts § 388, a defendant is liable under a negligent failure to warn claim if he "(a) knows or has reason to know that the chattle is likely to be dangerous for the use for which it is supplied, (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous." Tipton v. Michelin Tire Co., 101 F.3d 1145 (6th Cir. 1996) (citing Restatement (Second) of Torts § 388 (1965)).  The Kentucky Court of Appeals specifically stated that all product liability actions, "regardless of whether the case involves failure to adequately warn, defective design or other products liability theories, [require proof that] the product is defective." Leslie, 961 S.W.2d 803-04 (citing Montgomery Elevator Co. v. McCullough, 676 S.W.2d 776, 782 (Ky. 1984)).  The failure to warn claim is based on the assertion that the product is defective, and since the Court ruled the negligent design or manufacture claim fails since there is no proof of a probable defect, so must the failure to warn claim.  Therefore, summary judgment is appropriate for Besam.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Specialty Entrance's motion for summary judgment [DN 64] is **DENIED** and Besam's motion for summary judgment [DN 68] is **GRANTED**.

Joseph H. McKinley, Jr., Chief Judge
United States District Court

August 8, 2012

cc: counsel of record